UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CASSIE RIEDER, as Administrator and Personal Representative of the Estate of Decedent, MICHAEL FREDERICK HUBER, For the use and benefit of Decedent's Spouse, Kathleen Huber, and Decedent's Children Lindsey Michelle Huber and Stephen Michael Huber, | ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:20-cv-00206-TRM-CHS |
| vs. | ) ) | McDonough/Steger |
| HAMILTON COUNTY, TENNESSEE and UNKNOWN NUMBERS OF JOHN DOES, In their individual capacities and their Official capacities as agents of Hamilton County, Tennessee, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF UNKNOWN NUMBERS OF JOHN DOES

Pursuant to F.R.C.P. 56, Defendants "Unknown Numbers of John Does" submit the following Memorandum of Law in support of their Motion for Summary Judgment.

### I. INTRODUCTION

Michael Huber ("Mr. Huber" or "Huber") and Steven Harvey ("Mr. Harvey" or "Harvey") were each arrested by the Chattanooga Police Department ("CPD") on or about April 4, 2019. Huber and Harvey were eventually placed in the same cell with other detainees.

Mr. Huber was assaulted by Mr. Harvey on April 7, 2019. At no time did Mr. Huber inform any jail personnel that Mr. Harvey was a threat to him. Further, at no time did Mr. Huber or any

of the other detainees inform jail personnel that Mr. Huber had been assaulted or needed medical care. As demonstrated below, summary judgment is appropriate as to Hamilton County as to every claim raised by the Plaintiff.[1]

## II. FACTUAL BACKGROUND

**A.  Plaintiff's Factual Allegations as Contained in the Complaint.**

The Plaintiff makes the following factual allegations in his Complaint:

1. Mr. Huber was arrested on April 6, 2019. (Doc. 1-2, PageID #: 7, Complaint, ¶ 15);

2. While Mr. Huber was in a jail cell, he was assaulted by another inmate. (*Id.,* ¶ 17);

3. Following the initial assault, the Doe Defendants learned that the Deceased was being physically beaten by another inmate but kept the Deceased in the same holding cell with the assaulting inmate. (*Id.*, ¶ 18);

4. After the Doe Defendants obtained knowledge of the initial assault, the assaulting inmate continued to physically beat the Deceased, causing the Deceased to sustain injuries that ultimately lead to his death. (*Id.*, PageID #: 8, ¶ 19); and

5. Mr. Huber passed away on September 29, 2019, of injuries sustained from the assault. (*Id.*, ¶ 20).

**B.  Countervailing Facts in Opposition to the Plaintiff's Claims.**

The following countervailing facts are relevant in assessing the Plaintiff's claims:

1. Michael Huber was arrested by the CPD on April 4, 2019 on a charge of public intoxication. (JA pp. 6, 7; Clark Dec., ¶ 9, Ex. A – Huber Booking Record).

2. A bond of $500 was set. (JA p. 7; Clark Dec., ¶ 9, Ex. A).

---

[1] In further support of their Motion for Summary Judgment, to the extent applicable to these Defendants, the John Doe Defendants further rely upon the arguments made by Hamilton County in their Motion for Summary Judgment, pursuant to *F. R. Civ. P.* 10(c).

3.      Steven Harvey was arrested on April 4, 2019 by the CPD on various charges. (JA pp. 8-13; Clark Dec., ¶ 11, Ex. B – Harvey Booking Record).

4.      Mr. Huber was placed in cell 1QD14 with Harvey and other detainees on April 7, 2019. (JA pp. 14 - 17; Clark Dec., ¶ 12, Ex. C – Huber CJUS Committals Screenprint and CJUS Demographics Screenprint, and Ex. D – Harvey CJUS Committals Screenprint and CJUS Demographics Screenprint).

5.      The placement of both Harvey and Huber in 1QD14 was appropriate pursuant to Hamilton County Sheriff's Office policies and procedures, as documented by the Demographics Screenprints, which reflect that neither Harvey or Huber were identified as violent, in need of protective custody, high risk, or incompatible with other inmates. (JA pp. 14 - 25; Clark Dec., ¶¶ 12, 13, Exs. C and D, Ex. E – HCSO Policy 90.05.09 - Classification).

6.      On April 7, 2019, consistent with HCSO practice, cell checks were performed approximately every thirty (30) minutes by Corrections Officers. (JA pp. 26 - 33; Clark Dec., ¶ 14, Ex. F – Cell Check Log).

7.      On April 7, 2019, Harvey apparently assaulted Mr. Huber. (JA pp. 34 – 37; Clark Dec., ¶ 15, Ex. G – Incident Reports).

8.      Had any Corrections Deputy been informed of the assault on Mr. Huber when it occurred, an incident report would have been made at that time. (JA p. 3; Clark Dec., ¶ 16).

9.      Had a Corrections Deputy been informed of the assault on Mr. Huber when it occurred, medical assistance would have been sought for Mr. Huber. (JA p. 3; Clark Dec., ¶ 17).

10.     Incident reports were made when Mr. Huber's condition was discovered. (JA pp. 34 - 37; Clark Dec., ¶ 18, Ex. G).

11.     The absence of incident reports prior to the discovery of Mr. Huber's condition indicates that the Corrections Officers who performed cell checks after the assault occurred were unaware that Mr. Huber had been assaulted and injured. (JA p. 3; Clark Dec., ¶ 19).

12.     Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber or any other detainee informed any Sheriff's Office staff that Mr. Harvey posed any threat to Mr. Harvey at any time prior to the assault. (JA p. 3; Clark Dec., ¶ 20).

13. Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber requested to be moved from 1QD14 in order to remove him from any threat by Mr. Harvey at any time prior to the assault. (JA p. 3; Clark Dec., ¶ 21).

14. Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber reported at any time to Sheriff's Office staff that he had been involved in any incidents or altercations with Harvey. (JA p. 3; Clark Dec., ¶ 22).

15. Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber reported at any time to Sheriff's Office staff or medical staff that he needed medical attention due to an assault. (JA p. 3; Clark Dec., ¶ 23).

16. Based on a search for records of the HCSO, there are no records that reflect that the other detainees in 1QD14 at any time reported to Sheriff's Office staff or medical staff that Mr. Huber had been the victim of an assault. (JA p. 4; Clark Dec., ¶ 24).

17. Based on a search for records of the HCSO, there are no records that reflect that the other detainees in 1QD14 at any time reported to Sheriff's Office staff or medical staff that Mr. Huber needed medical attention due to an assault. (JA p. 4; Clark Dec., ¶ 25).

18. Mr. Huber was given an initial medical screening as part of the intake process and was seen by medical personnel throughout his detention. (JA pp. 38 – 42; Clark Dec., ¶ 26, Ex. H – Redacted Inmate Receiving Screening form and Redacted CJUS medical notes).[2]

19. Once Mr. Huber's injuries were discovered by medical personnel, they immediately began assessment and treatment. (JA p. 43; Clark Dec., ¶ 21, Ex. I – Critical Incident Log).

20. Corrections Officers receive thorough training, as required by various accrediting agencies, including the Tennessee Corrections Institute (TCI), American Corrections Association (ACA), Prison Rape Elimination Act (PREA), Peace Standards and Training (POST), and the National Commission on Correctional Health Care (NCCHC), prior to being placed in rotation to work in the Hamilton County Jail. (JA pp. 44 - 53; Clark Dec., ¶ 28, Ex. J – 90.01.05 – Training and Staff Development).

---

[2] Mr. Huber's records are provided for the purpose of demonstrating that he was seen by medical personnel while at the Hamilton County jail; however, they have been redacted in order to not reveal information protected by HIPAA. As to the Inmate Receiving Screening form, all selections have been redacted so as to not provide information by reverse inference.

21. Corrections Officers receive training, consistent with HCSO Policy, relative to identifying and addressing physical altercations between detainees. (JA pp. 54 - 58; Clark Dec., ¶ 29 Ex. J).

22. Corrections Officers receive training, consistent with HCSO Policy, relative to the appropriate classification for the purpose of housing detainees. (JA pp. 18 - 25; Clark Dec., ¶ 30, Ex. E).

23. Corrections Officers receive training, consistent with HCSO Policy, relative to the appropriate circumstances for which to prepare incident reports. (JA pp. 54 - 58; Clark Dec., ¶ 31, Ex. K – HCSO Policy 90.06.03 – Incident Reports).

24. Corrections Officers receive training regarding detainee medical care. (JA pp. 44 – 53, 59 - 61; Clark Dec., ¶ 32, Ex. J; Ex. L – HCSO Policy 90.01.10 – Health Services Training for Correctional Officers).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). The moving party must support its motion with material facts in the record that could be admitted in evidence at trial and which demonstrate that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant's burden may also be met by showing "an absence of evidence to support the non-moving party's case." *Id.* at 325. Additionally, the moving party's initial burden may be met "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party presents evidence sufficiently supporting its motion, the non-moving party is not entitled to a trial merely on the basis of allegations. The non-moving party may not rest on its pleadings; rather, the non-moving party must come forward with significant

probative evidence to support his or her claims or demonstrate a material fact dispute for trial. See Celotex Corp., 477 U.S. at 324; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). "The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury can reasonably find for the Plaintiff*." Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 252 (1986).

## IV. ARGUMENT

**A.   The failure to name specific individuals is now fatal as to the John Doe Defendants.**

As noted, the Plaintiffs have listed "Unknown Numbers of John Doe Defendants" as parties. The Scheduling Order establishes a deadline for amending pleadings to add parties. (Doc. 13, ¶ 5(a)). The Plaintiff has never attempted to amend her Complaint to name any additional officer or agent as a party and has not served anyone with process in this matter.

The statute of limitations to bring a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Nelkin v. Knox County, Tennessee,* No. 3:14-CV-41-TAV-CCS, 2015 WL 2448320, at *9 (E.D. Tenn. May 20, 2015)(citing *Eidson v. State of Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007). The Tennessee statute of limitations for personal injury claims, and specifically for claims brought under federal civil rights statutes such as § 1983, is one year. *Id.* The events of which the Plaintiff complains occurred on April 7, 2019, and suit was filed on April 2, 2019. Substantially more than one year has elapsed since the event upon which the Complaint was predicated.

Accordingly, the naming of the John Doe Defendants is ineffective in attempting to preserve the statute as to any additional persons. The naming of a John Doe defendant does not "stop the statute of limitations from running or toll the limitations period as to that defendant."

*Nelkin* at *9; *See also Cross v. City of Detroit,* No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008)(citing *Garvin v. City of Philadelphia,* 354 F.3d 215, 220 (3rd Cir. 2003)). Moreover, the *Federal Rules of Civil Procedure* offers no remedy where a plaintiff did not know or opted not to find out the identity of a defendant within the limitations period. *Id.* (citing *Smith v. City of Akron,* 476 F. App'x 67, 69 (6th Cir. 2012). Summary dismissal, then, is appropriate as to any claim against the unnamed John Doe Defendants for that reason alone.

    **B.    Qualified Immunity Applies to the John Doe Defendants.**

Meanwhile, the defense of qualified immunity has been raised on behalf of all individual Defendants in this matter, including the John Doe Defendants. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

The determination of whether an official is entitled to qualified immunity requires a twostep analysis, and a court may analyze the steps in either order. *Pearson v. Callahan,* 129 S.Ct.808, 818 (2009). The court must determine (1) whether, viewing the facts in the light most favorable to the plaintiff, there was a violation of the plaintiff's constitutional right(s), and (2) whether the right was clearly established to a reasonable person, such that its violation would be objectively unreasonable. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Brousseau v. Haugen,* 543 U.S. 194, 195 (2004); *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

When a defendant raises qualified immunity to a civil rights claim, the plaintiff bears the burden of proving that the defendant is not entitled to summary judgment. *Davenport v. Causey,*

521 F.3d 544 (6th Cir. 2008). In this case, it is asserted on behalf of the John Doe Defendants that qualified immunity is applicable to a situation in which the record reflects no wrongful activity on the part of any other individual, not already named as Defendants, who might have some kind of involvement in the events described above.

"To make out a constitutional claim for denial of medical care, the plaintiff must first meet the objective component by demonstrating "the existence of a 'sufficiently serious' medical need." *Burwell v. City of Lansing, Michigan,* 7 F.4th 456, 463 (6th Cir. 2021)(citing *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir. 2004)(quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Meanwhile, "the subjective component of the deliberate indifference test requires the plaintiff to show that the prison official had 'a sufficiently culpable state of mind' in denying medical care." *Burwell* at 465 (citing *Phillips v. Roane Cty., Tenn.,* 534 F.3d 531, 542 (6th Cir. 2008); *see also Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

"Deliberate indifference 'entails something more than mere negligence,' but can be 'satisfied by something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result.'" *Burwell* at 465 (citing *Blackmore,* 390 F.3d at 895-96 (quoting *Farmer,* 511 U.S. at 835, 114 S.Ct.1970)). "There is no constitutional violation '[i]f the officers failed to act in the face of an obvious risk of which they should have known but did not.'" *Id.* (quoting *Garretson v. City of Madison Heights,* 407 F.3d 789, 797 (6th Cir. 2005). It is not sufficient then for a plaintiff to demonstrate a question of fact, *i.e.,* whether officers "should have known about a medical condition." *Id.* (quoting *Watkins v. City of Battle Creek,* 273 F. 3d 682, 686 (6th Cir. 2001).

In this case, there is nothing to demonstrate that any corrections officer knew that Mr. Huber had been assaulted and needed medical care. It is further not sufficient for the Plaintiff to rely upon the contention that a corrections officer "should have known." In this case, then, there is nothing in the record to demonstrate that any of the John Doe Defendants acted were deliberately indifferent in any of their interactions with Mr. Huber. Accordingly, because the Plaintiff cannot sustain an element of her claim on which she bears the burden of proof at trial, namely that Mr. Huber suffered a constitutional violation at the hands of unnamed individuals, it is proper to grant summary judgment to the John Doe officials in their individual capacities. Even to the extent that the Court can find the existence of a constitutional violation in this record, however, the John Doe Defendants would still be entitled to qualified immunity in the absence of a violation of a clearly established right.

C.  **No Claim pursuant to *Tenn. Code Ann.* § 8-8-302 Lies against the John Does.**

The Plaintiff has asserted claims against the John Doe Defendants in both their individual capacities pursuant to *Tenn. Code Ann.* § 8-8-302. As indicated in both the title and the statutory language, the statute contemplates suit only against a County:

**§ 8-8-302. Suits against county**

Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

*Tenn. Code Ann.* § 8-8-302 (West).

This claim fails, then, as to any of the individual John Does, and summary judgment is appropriate.

**D.    No Claim Lies against the John Doe Defendants pursuant to *Tenn. Code Ann.* § 29-20-201,** *et seq.*

To the extent the Plaintiff has raised negligence claims against the John Doe Defendants, they are further entitled to dismissed pursuant to immunity provided pursuant to the Tennessee Governmental Tort Liability Act:

> (b) No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner. No claim for health care liability may be brought against a health care practitioner or judgment entered against a health care practitioner for damages for which the governmental entity is liable under this chapter, unless the amount of damages sought or judgment entered exceeds the minimum limits set out in § 29-20-403 or the amount of insurance coverage actually carried by the governmental entity, whichever is greater, and the governmental entity is also made a party defendant to the action. As used in this subsection (b), "health care practitioner" means physicians licensed under title 63, chapter 6, and nurses licensed under title 63, chapter 7.

*Tenn. Code Ann*. § 29-20-310 (West)

The applicability of this immunity has been recognized and relied upon by the Sixth Circuit when a plaintiff raises claims of negligence. *Matthews v. Pickett Cty., Tennessee,* 46 F. App'x 261, 264 (6th Cir. 2002)(citing *Erwin v. Rose,* 980 S.W.2d 203 (Tenn. Ct. App. 1998).

For this reason as well, the John Doe Defendants are entitled to be dismissed as Defendants in this matter.

## V. CONCLUSION

For the reasons set forth above, the John Doe Defendants request that an order be entered granting summary judgment as to all allegations against them and dismissing this action with all costs assessed against the Plaintiffs.

**HAMILTON COUNTY ATTORNEY'S OFFICE**

By: s/*Sharon M. Milling*
R. Dee Hobbs, BPR No. 10482
Sharon McMullan Milling, BPR No. 36876
625 Georgia Avenue, Suite 204
Chattanooga, TN 37402
Phone/Fax: 423-209-6150/6151
Email: rdhobbs@hamiltontn.gov
Email: sharonm@hamiltontn.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/*Sharon M. Milling*