**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **CASSIE RIEDER, as Administrator and** | ) | |
| **Personal Representative of the Estate of** | ) | |
| **Decedent, MICHAEL FREDERICK HUBER,** | ) | |
| **For the use and benefit of Decedent's** | ) | |
| **Spouse, Kathleen Huber, and Decedent's** | ) | |
| **Children Lindsey Michelle Huber and** | ) | |
| **Stephen Michael Huber,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 1:20-cv-00206-TRM-CHS** |
| | ) | |
| **vs.** | ) | **McDonough/Steger** |
| | ) | |
| **HAMILTON COUNTY, TENNESSEE and** | ) | |
| **UNKNOWN NUMBERS OF JOHN DOES,** | ) | |
| **In their individual capacities and their** | ) | |
| **Official capacities as agents of Hamilton** | ) | |
| **County, Tennessee,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**
**OF HAMILTON COUNTY, TENNESSEE**

Hamilton County, Tennessee ("Hamilton County" or "the County") shows the following in support of its Motion for Summary Judgment:

## I. INTRODUCTION

Michael Huber ("Mr. Huber" or "Huber") and Steven Harvey ("Mr. Harvey" or "Harvey") were each arrested by the Chattanooga Police Department ("CPD") on or about April 4, 2019. Huber and Harvey were eventually placed in the same cell with other detainees.

Mr. Huber was assaulted by Mr. Harvey on April 7, 2019. At no time did Mr. Huber inform any jail personnel that Mr. Harvey was a threat to him. Further, at no time did Mr. Huber or any

of the other detainees inform jail personnel that Mr. Huber had been assaulted or needed medical care. As demonstrated below, summary judgment is appropriate as to Hamilton County as to every claim raised by the Plaintiff.

## II. FACTUAL BACKGROUND

**A.      Plaintiff's Factual Allegations as Contained in the Complaint.**

The Plaintiff makes the following factual allegations in his Complaint:

1.      Mr. Huber was arrested on April 6, 2019. (Doc. 1-2, PageID #: 7, Complaint, ¶ 15);

2.      While Mr. Huber was in a jail cell, he was assaulted by another inmate. (*Id.,* ¶ 17);

3.      Following the initial assault, the Doe Defendants learned that the Deceased was being physically beaten by another inmate but kept the Deceased in the same holding cell with the assaulting inmate. (*Id.*, ¶ 18);

4.      After the Doe Defendants obtained knowledge of the initial assault, the assaulting inmate continued to physically beat the Deceased, causing the Deceased to sustain injuries that ultimately lead to his death. (*Id.*, PageID #: 8, ¶ 19); and

5.      Mr. Huber passed away on September 29, 2019, of injuries sustained from the assault. (*Id.*, ¶ 20).

**B.      Countervailing Facts in Opposition to the Plaintiff's Claims.**

The following countervailing facts are relevant in assessing the Plaintiff's claims:

1.      Michael Huber was arrested by the CPD on April 4, 2019 on a charge of public intoxication. (JA pp. 6, 7; Clark Dec., ¶ 9, Ex. A – Huber Booking Record).

2.      A bond of $500 was set.   (JA p. 7; Clark Dec., ¶ 9, Ex. A).

3.      Steven Harvey was arrested on April 4, 2019 by the CPD on various charges. (JA pp. 8-13; Clark Dec., ¶ 11, Ex. B – Harvey Booking Record).

4.      Mr. Huber was placed in cell 1QD14 with Harvey and other detainees on April 7, 2019. (JA pp. 14 - 17; Clark Dec., ¶ 12, Ex. C – Huber CJUS Committals

Screenprint and CJUS Demographics Screenprint, and Ex. D – Harvey CJUS Committals Screenprint and CJUS Demographics Screenprint).

5.     The placement of both Harvey and Huber in 1QD14 was appropriate pursuant to Hamilton County Sheriff's Office policies and procedures, as documented by the Demographics Screenprints, which reflect that neither Harvey or Huber were identified as violent, in need of protective custody, high risk, or incompatible with other inmates. (JA pp. 14 - 25; Clark Dec., ¶¶ 12, 13, Exs. C and D, Ex. E – HCSO Policy 90.05.09 - Classification).

6.     On April 7, 2019, consistent with HCSO practice, cell checks were performed approximately every thirty (30) minutes by Corrections Officers. (JA pp. 26 - 33; Clark Dec., ¶ 14, Ex. F – Cell Check Log).

7.     On April 7, 2019, Harvey apparently assaulted Mr. Huber. (JA pp. 34 – 37; Clark Dec., ¶ 15, Ex. G – Incident Reports).

8.     Had any Corrections Deputy been informed of the assault on Mr. Huber when it occurred, an incident report would have been made at that time. (JA p. 3; Clark Dec., ¶ 16).

9.     Had a Corrections Deputy been informed of the assault on Mr. Huber when it occurred, medical assistance would have been sought for Mr. Huber. (JA p. 3; Clark Dec., ¶ 17).

10.     Incident reports were made when Mr. Huber's condition was discovered. (JA pp. 34 - 37; Clark Dec., ¶ 18, Ex. G).

11.     The absence of incident reports prior to the discovery of Mr. Huber's condition indicates that the Corrections Officers who performed cell checks after the assault occurred were unaware that Mr. Huber had been assaulted and injured. (JA p. 3; Clark Dec., ¶ 19).

12.     Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber or any other detainee informed any Sheriff's Office staff that Mr. Harvey posed any threat to Mr. Harvey at any time prior to the assault. (JA p. 3; Clark Dec., ¶ 20).

13.     Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber requested to be moved from 1QD14 in order to remove him from any threat by Mr. Harvey at any time prior to the assault. (JA p. 3; Clark Dec., ¶ 21).

14.     Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber reported at any time to Sheriff's Office staff that he had been involved in any incidents or altercations with Harvey. (JA p. 3; Clark Dec., ¶ 22).

15.     Based on a search for records of the HCSO, there are no records that reflect that Mr. Huber reported at any time to Sheriff's Office staff or medical staff that he needed medical attention due to an assault.  (JA p. 3; Clark Dec., ¶ 23).

16.     Based on a search for records of the HCSO, there are no records that reflect that the other detainees in 1QD14 at any time reported to Sheriff's Office staff  or medical staff that Mr. Huber had been the victim of an assault. (JA p. 4; Clark Dec., ¶ 24).

17.     Based on a search for records of the HCSO, there are no records that reflect that the other detainees in 1QD14 at any time reported to Sheriff's Office staff or medical staff that Mr. Huber needed medical attention due to an assault. (JA p. 4; Clark Dec., ¶ 25).

18.     Mr. Huber was given an initial medical screening as part of the intake process and was seen by medical personnel throughout his detention. (JA pp. 38 – 42; Clark Dec., ¶ 26, Ex. H – Redacted Inmate Receiving Screening form and Redacted CJUS medical notes).[1]

19.     Once Mr. Huber's injuries were discovered by medical personnel, they immediately began assessment and treatment. (JA p. 43; Clark Dec., ¶ 21, Ex. I – Critical Incident Log).

20.     Corrections Officers receive thorough training, as required by various accrediting agencies, including the Tennessee Corrections Institute (TCI), American Corrections Association (ACA), Prison Rape Elimination Act (PREA), Peace  Standards and Training (POST), and the National Commission on Correctional Health Care (NCCHC), prior to being placed in rotation to work in the Hamilton County Jail. (JA pp. 44 - 53; Clark Dec., ¶ 28, Ex. J – 90.01.05 – Training and Staff Development).

21.     Corrections Officers receive training, consistent with HCSO Policy, relative to identifying and addressing physical altercations between detainees. (JA pp. 54 - 58; Clark Dec., ¶ 29 Ex. J).

22.     Corrections Officers receive training, consistent with HCSO Policy, relative to the appropriate classification for the purpose of housing detainees. (JA pp. 18 - 25; Clark Dec., ¶ 30, Ex. E).

---

[1] Mr. Huber's records are provided for the purpose of demonstrating that he was seen by medical personnel while at the Hamilton County jail; however, they have been redacted in order to not reveal information protected by HIPAA.  As to the Inmate Receiving Screening form, all selections have been redacted so as to not provide information by reverse inference.

23.     Corrections Officers receive training, consistent with HCSO Policy, relative to the appropriate circumstances for which to prepare incident reports. (JA pp. 54 - 58; Clark Dec., ¶ 31, Ex. K – HCSO Policy 90.06.03 – Incident Reports).

24.     Corrections Officers receive training regarding detainee medical care. (JA pp. 44 – 53, 59 - 61; Clark Dec., ¶ 32, Ex. J; Ex. L – HCSO Policy 90.01.10 – Health Services Training for Correctional Officers).

### III. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Shah v. Racetrac Petroleum Co.,* 338 F.3d 557, 566 (6th Cir. 2003). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of trial for resolving a material, factual dispute. *Celotex,* 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson,* 477 U.S. 252; *Shah,* 338 F.3d at 566; *McLean v. Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir. 2000). In fact, evidence suggesting a mere possibility of a factual dispute is not enough to preclude summary judgment. *Shah,* 338 F.3d at 566; *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986).

The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 248, 249; *Nat'l Satellite Sports,* 253 F.3d at 907. While the court draws all reasonable factual inferences in the light most favorable to the non-moving party, it may grant summary judgment if the record taken as a whole could not lead a rational, objective jury to find for the non-moving party. *Matsushita,* 475 U.S. at 587; *McKinnie v. Roadway Express, Inc.,* 341 F.3d 554, 557 (6th Cir. 2003).

Conclusory allegations, supported only by a plaintiff's claims, cannot withstand a motion for summary judgment. *Arendale Heights v. City of Memphis,* 519 F.3d 587 (6th Cir. 2008). In that regard, a plaintiff's "factual support" to refute a summary judgment motion must be sufficiently plausible to support a verdict or judgment under prevailing law. *Gooch v. Life Investors Ins. Co. of America,* 264 F.R.D. 340 (M.D. Tenn. 2009).

## IV. LAW AND ARGUMENT

**A.    Mr. Huber Was Appropriately Held in the Hamilton County Jail after the Judicial Magistrate Set Bond.**

While the Plaintiff has not raised a claim of false imprisonment in the Complaint, Plaintiff's counsel has represented to the Court at the scheduling conference that Mr. Huber should only have been held a limited amount of time based on the charge against him. To the extent that the Plaintiff would assert this claim, corrections officers have a statutory duty to carry out orders of a court. The Sixth Circuit has recognized that officials must be permitted to rely upon a court's directives and noted:

> As other circuits have held, enforcing or executing a court order is intrinsically associated with a judicial proceeding . . . . Moreover, officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function. It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Bush v. Rauch*, 38 F.3d 842, 847-48 (6th Cir. 1994) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 2613 (1993))(other citations omitted).

Accordingly, the Sixth Circuit has held that quasi-judicial activities, such as the issuance of a warrant, enjoy absolute immunity from suit. *See e.g., Foster v. Walsh,* 864 F.2d 416, 417-418

(6th Cir. 1988)(affirming dismissal of suite against court clerk who issued arrest warrant based on an erroneous court order).

Here, the corrections officers relied on an order of the Magistrate that set a bond for Mr. Huber, which did not allow for his release until such bond was made. Therefore, these Corrections Officers were merely acting in accordance with a valid court order, and no violation of the Plaintiff's constitutional rights could arise from their carrying out that order. To the extent the Plaintiff has made or anticipates making such a claim, summary judgment is proper.

**B.     The Plaintiff Was Not Deprived of His Rights under the Fourteenth Amendment to the United States Constitution on any Theory.**

**1.     Failure to Protect.**

Pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires a showing of a sufficiently culpable state of mind – one of deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834, 842 (1994). The objective component in a failure-to-protect claim requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. A defendant exhibits deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.

There is no constitutional violation here because there is no evidence of deliberate indifference with respect to the claimed assault. While the Plaintiff asserted in the Complaint that individual corrections officers were aware that Mr. Huber had been assaulted, the record

demonstrates otherwise. *Id.* at 837. Because this claim is not supported by facts that would satisfy the subjective prong of a failure-to-protect claim, it must fail.

**2.        Failure to Provide Medical Care.**

Under the Fourteenth Amendment, detainees have a due process right to receive adequate medical care while they are in custody. *Linden v. Washtenaw County*, 167 Fed. Appx. 410 (6th Cir. 2006)*; Barber v. City of Salem,* 953 F.2d 232 (6th Cir. 1992). To establish a violation of that right, a detainee must show that officials acted with deliberate indifference to his serious medical needs. *E.g., Farmer v. Brennan,* 511 U.S. 825 (1994).

As noted above, the deliberate indifference standard of liability has both an <u>objective</u> and a <u>subjective</u> component. *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006). Regarding medical care issues, this means that an isolated incident of inadvertence or negligence does not violate the Fourteenth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference may be "manifested by prison doctors in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05. Generally, however, once a prisoner has actually received treatment and the dispute regards the adequacy of such treatment, such dispute does not state a cognizable § 1983 claim. *Id*. at 105-06.

The <u>objective</u> component requires the existence of a sufficiently serious medical need." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (emphasis added and citations and internal punctuation omitted). A sufficiently serious medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510,518 (6th Cir. 2008) (citations omitted).

Meanwhile, "The <u>subjective</u> component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care." *Blackmore,* 390 F.3d at 896 (Emphasis added). A sufficiently culpable state of mind is one where the official was **<u>actually aware</u>** of the plaintiff's serious medical needs and chose to disregard that risk. *Farmer*, 511 U.S. at 837. (Emphasis added). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In this case, the record reflects that the subjective component of the analysis has not been satisfied. Corrections officers did not know that Mr. Huber had been injured and was in need of medical treatment. On the routine evening medical call, medical staff discovered that Mr. Huber needed medical treatment that was rendered immediately. The Plaintiff's claim of inadequate medical treatment is not supported in this circumstance and does not state a cognizable § 1983 claim against Hamilton County.  Summary judgment for Hamilton County on this claim, then, is appropriate.

> **3.    Policy, custom and practice.**

This record reflects no County policy, custom or practice that purportedly violated the constitutional rights of the Plaintiff. As discussed more fully below, any claim against a governmental entity requires a showing that the entity itself acted wrongfully and that such wrongful action caused the deprivation of a constitutionally protected right.  No such showing

can be made in this case, however, making an award of summary judgment appropriate. *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).

### 4. The Record Does Not Support a Claim Based on Failure to Supervise.

"Supervisory liability" can be imposed without any need to determine municipal liability. Supervisory liability, however, runs only against an **individual**, is based on his or her personal responsibility for the constitutional violation, and does not require proof of official policy or custom as the "moving force" behind the conduct. *City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)(quoting *Polk County v. Dodson,* 454 U.S. 312, 326 (1981)). (Emphasis added).

When supervisory liability is imposed, it is imposed against the supervising official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates. *Frodge v. City of Newport,* 501 Fed. App'x. 519 (6th Cir. Ky. 2012). Municipal and supervisory liability, therefore, present distinct and separate questions that should be treated and analyzed as such. Supervisory liability concerns whether a supervisory official's own personal action or inaction subjected a person to the deprivation of her federally protected rights. Generally, liability exists for a supervisory official when he personally participated in the wrongful conduct or breached a duty imposed by law.

Meanwhile, municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the plaintiff's federally protected rights. If this distinction were not made, it would be possible to impose *respondeat superior* liability on a municipality for the actions or inactions of an individual (the supervisor) when such is expressly precluded. *See City of Canton,* 489 U.S. 378; *Pembaur,* 475 U.S. 469. (Emphasis added).

Accordingly, the allegation in the Complaint that the County failed to manage or supervise the John Doe Defendants states no constitutional claim against Hamilton County. Further, the record does not support such claims in any regard. Summary judgment is appropriate as to this theory as well.

**5.      There Is No Factual Basis to Support a Failure to Train Claim.**

A governmental entity can be held liable under § 1983 for its failure to properly train and supervise its employees. Liability on this theory will only exist against the County, however, if the Plaintiff can demonstrate that the County's failure to train or supervise its employees evidences deliberate indifference to the rights of the arrestees/detainees such that it, in effect, constitutes a governmental custom or policy. *City of Canton,* 489 U.S. 378.

To establish liability under *City of Canton,* "the plaintiff must prove that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that that the inadequacy is "closely related to' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992)(citing *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989)).

The Supreme Court has stated that the fact "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton,* 489 U.S. at 390-91. Further, "[i]t may be, for example, that an otherwise sound program has been negligently administered" or that the injury could have been avoided if an officer had better or more training. *Id.* at 391. Even if either of these scenarios could be found in this instance, which is denied, neither of these circumstances would be sufficient to hold the County liable.

Generally, to demonstrate that a governmental entity acted with deliberate indifference, a plaintiff must show that the entity was aware of prior unconstitutional actions of its employees and failed to respond. *Id.* It is not sufficient for a plaintiff in a § 1983 case to merely show that his specific injury could have been prevented or avoided with more or better training. *City of Canton,* 489 U.S. at 390-91.

The evidence in this record, even when viewed in the light most favorable to the Plaintiff, is insufficient to establish a genuine issue regarding a constitutional violation by the County. Rather, the Plaintiff merely states conclusory allegations that the County failed to train its officers. There is simply no factual support for this allegation – no specific policies or instances are referenced to sufficiently support a failure to train claim.  Because no support exists in the record for this assertion, it must fail as a matter of law, and Hamilton County is entitled to summary judgment.

### 6.    The "Zone of Danger" Analysis Fails.

The Plaintiff claims that Mr. Huber's civil rights were violated because the County and Doe Defendants created and maintained a "zone of danger" in which an inmate could receive harm in the form of beating and lack of medical care. (Doc. 1-2, PageID #: 12, Complaint, ¶ 25).  The Plaintiff's statement regarding "zone of danger" does not support the Plaintiff's claim of a violation of constitutional rights.

Used to address state tort claims, the "zone of danger test" acts as a limitation on liability where a plaintiff is "neither physically injured nor in an area where physical injury is possible." *Ramsey v. Beavers,* 931 S.W.2d 527, 528 (1996).  The application of the zone of danger limitation contemplates recovery by a **_third party_**.  *Id.* at 529. (Emphasis added). In *Ramsey,* the plaintiff

claimed that he "suffered fright, shock and emotional suffering" and "physical pain and suffering resulting from witnessing his mother's death." *Id.* In analyzing the applicability of the zone of danger limitation, the *Ramsey* Court traced the then-70 year history of the zone of danger analysis. *Id.* (citing *Nuckles v. Tenn. Elec. Power Co.,* 299 S.W. 775 (1927); *Shelton v. Russell Pipe and Foundry Co*., 570 S.W.2d 861 (Tenn. 1978);  and *Camper v. Minor,* 915 S.W.2d 437 (Tenn. 1996).

The assertion that Hamilton County and the John Doe Defendants created a "zone of danger," then, does not support a civil rights claim on behalf of Mr. Huber and summary judgment is appropriate.

**C.     Municipal Liability under § 1983 Does Not Extend to Act of Agents.**

The law is well-settled that a municipality cannot be held liable under a theory of *respondeat superior*. *See City of Canton v. Harris,* 489 U.S. 3878 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986). Rather, Hamilton County can only be liable when it can fairly be said that the County itself is the wrongdoer.  *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 122 (1992); *Molton v. City of Cleveland,* 839 F.2d 240 (6th Cir. 1988).  Put another way, the County will only be required to respond in damages for a constitutional violation where a plaintiff can identify a municipal policy, custom or practice and can also show a direct causal link between the policy or custom and the particular constitutional injury claimed. *Pembaur*, 475 U.S. at 477-81; *Garner v. Memphis Police Department,* 8 F.3d 358, 363-354 (6th Cir. 1993).   Perhaps most importantly, a plaintiff must also show that his injury was caused by a constitutional violation in the first place. *Collins,* 503 U.S. at 120.

Therefore, to prevail against the County under §1983 on these claims, the Plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the County's own responsibility for that violation. *See Howard v. City of Girard,* 346 F.App'x 49, 51 (6th Cir. 2009)(*citing Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006)). To that end, the Plaintiff must identify an unconstitutional policy or custom of the County in order to prevail on her § 1983 claims. *See Id.* The County asserts that this burden has not and cannot be met by the Plaintiff on this record and summary judgment is appropriate.

This record reflects no County policy, custom or practice that purportedly violated the constitutional rights of the Plaintiff. As discussed more fully below, any claim against a governmental entity requires a showing that the entity itself acted wrongfully and that such wrongful action caused the deprivation of a constitutionally protected right. No such showing can be made in this case, however, making an award of summary judgment appropriate.

    **1.**     **The Allegations of the Complaint Base County Liability on an Agency Theory.**

The Complaint alleges that Hamilton County is responsible for the acts and omissions of its employees as agents of the County. (Complaint, Doc. 1-2, ¶ 3). This count, then, attempts to attach vicarious liability on the County for the acts of its agents.

As just noted, a theory of *respondeat superior* cannot stand against the County. *See City of Canton,* 489 U.S. 3878 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986). The Complaint alleges liability against the County but states its allegations against the actions of its agents.

**2.** **The acts complained of by the Plaintiff do not comprise a constitutional violation.**

As also stated above, perhaps most germane to this analysis is the requirement that an injury was caused by a constitutional violation in the first place. *Collins,* 503 U.S. at 120. Therefore, even to the extent the Plaintiff can demonstrate that individuals affiliated with the County deprived the Plaintiff of constitutionally protected rights, which is denied entirely, as a matter of law the County is not accountable for such violations. Summary judgment for Hamilton County is appropriate for this reason alone.

**3.** **There is No "Negligent" Violation of the Constitution.**

<u>Count III</u> of the Complaint alleges "Negligent Training" and <u>Count IV</u> of the Complaint alleges "Negligent Supervision." To the extent the Plaintiff bases a 42 U.S.C. §1983 claim on these allegations, Hamilton County is entitled to summary judgment.

The Supreme Court has long recognized that the due process clause is not implicated by a **negligent** act causing unintended loss of or injury to life, liberty or property. Accordingly, mere lack of due care by a municipality does not "deprive" an individual of life, liberty or property under the Fourteenth Amendment. *Daniels v. Williams*, 106 S.Ct. 662 (1986). In other words, there is no such thing as a negligent violation of the Constitution. Accordingly, the Plaintiff's assertions of negligent training and negligent supervision fail to state a constitutional claim, and summary judgment is appropriate.

**D.** **Hamilton County Is Entitled to Summary Judgment as to Any State Law Claims Made Against It.**

In addition to articulating federal constitutional claims, the Plaintiff has also asserted and implied state law claims as to Hamilton County.

1. **No Viable Claim pursuant to *Tenn. Code Ann.* § 8-8-302 Lies against the County.**

The Plaintiff has asserted claims against the John Doe Defendants in both their individual capacities pursuant to *Tenn. Code Ann.* § 8-8-302. As indicated in both the title and the statutory language, however, the statute contemplates suit only against a County:

**§ 8-8-302. Suits against county**

Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

*Tenn. Code Ann.* § 8-8-302 (West).

Obviously, this claim as stated fails as to the John Does. To the extent that the Court considers it a claim against the County, it still fails.

A suit against a county in accordance with *Tenn. Code Ann.* § 8-8-302 can lie in limited circumstances for the alleged wrongs of Officers, provided that the deputy at the time of the occurrence was acting by virtue of or under color of the office. The provisions of *Tenn. Code Ann.* § 8-8-302 are narrowly construed, however, and have been interpreted to hold a county liable only for "intentional misconduct" that arises to "official misconduct" as defined by the criminal law of the State of Tennessee. The Court of Appeals noted the following in *Currie v. Haywood County,* 2011 WL 826804 (No. W2010-00453-COA-R3-CV) "Unfortunately, sections 8-8-301 to 303 of the Tennessee Code do not define this phrase. In considering the meaning of the phrase 'by virtue of or under color of office,' for purposes of section 8-8-302*,* this Court has previously stated:

A criminal statute, section 39-16-402 of the T.C.A. is instructive on the interpretation of the phrase "by virtue of or under color of office." Section 39-16-402 provides:

(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly: . . . (2) Commits an act under color of office or employment that exceeds the servant's official power. . .

(b) For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity or *takes advantage of such actual or purported capacity.* T.C.A. § 39-16-402 (1997). Thus, when a deputy sheriff intentionally or knowingly uses his office ***to facilitate a crime***, he is acting under color of his office under this statute. *Id.* at 3-4. (Emphasis added).

It is not coincidental that those cases that expose a county to liability under 8-8-302 involve only a deputy's <u>actions that rise to the level of criminal conduct</u>. In *Currie,* for example, a deputy sheriff went to a victim's home to conduct police business and sexually assaulted her. After termination of his employment, he pled guilty to a charge of official misconduct. Under those facts, the Court of Appeals upheld a judgment for damages against both Haywood County under 8-8-302 and against the deputy for his own assaultive acts.

A similar result occurred in *J.W. ex rel. Watts v. Maury County,* No. M2001-02768-COA-R3-CV, 2003 WL 1018138 (Tenn. Ct. App. W.S. March 11, 2003), perm. App. Denied (Tenn. Sept. 2, 2003). In *Watts,* a fourteen-year-old boy at a county school attempted suicide. The school resource ("SRO"), a county deputy, was contacted by the child's mother at least in part because of his position as an SRO. The SRO utilized his status in some regard to persuade the mother to trust him to allow the child to sleep at his apartment, where he would sexually assault the child. The officer was terminated from employment and later pled guilty to several *criminal* charges.

As was true in *Currie,* the Court in *Watts* also relied upon *Tenn. Code Ann.* § 39-16-402, the "official misconduct" provision, for help in construing "intentional misconduct" occurring "by

virtue of or under color of office." Using the same reasoning as would later be applied in *Currie,* the Court reversed the trial court's grant of summary judgment.

The Plaintiff's claims pursuant to 8-8-302 are predicated on the allegations that: (1) corrections officers knew that Mr. Huber had been assaulted but did not remove him from the cell; (2) because Mr. Huber was not removed from the cell, Harvey assaulted him again; and (3) that there was a lack of care. None of these allegations is supported by the record. Moreover, none of these actions rise to the level of criminal conduct. Under the facts and the entire record, Hamilton County has no liability for the John Doe Defendants' acts pursuant to *Tenn. Code Ann.* § 8-8-302. Summary judgment is appropriate as to Hamilton County on this claim.

**2.      There is No Viable Claim pursuant to the Tennessee Governmental Tort Liability Act on These Facts.**

Any negligence claims against Hamilton County fail as a matter of law. As Tennessee courts have long recognized, jails are not insurers of inmate safety, and this rule effectuates the judicial understanding of public policy in Tennessee. Otherwise, it could be concluded that jails and prisons are in effect strictly liable for all inmate injuries incurred while in custody. *Gillespie v. Metro Gov't,* No. 01A01-9190-CV-00317, 1992 WL 9441, at *1 (Tenn. Ct. App. Jan 24, 1992). *See also Harvey v. Dickson Cnty.,* No. M2007-01793-COA-R3-CV, 2008 WL 216598, at *1 (Tenn. Ct. App. Feb. 5, 2008) *Kinningham v. State,* No. M2001-00495-COA-R3-CV, 2001 WL 1089501, at *2 (Tenn. Ct. App. Sept. 18, 2001); *Hanks v. State,* No. 02A01-9810-BC-00295, 1999 WL 454459, at *3 (Tenn. Ct. App. July 2, 1999); *Cockrum v. State,* 843 S.W.2d 433, 438 (Tenn. Ct. App. 1992).

When the following principles are applied to the facts of this case, even construing facts in a light most favorable to the Plaintiff, the claim of negligence against Hamilton County fails as

a matter of law due to the lack of a foreseeable threat known to the County from Steve Harvey against Mr. Huber.

**3. Any Liability of Hamilton County for an Inmate-on-Inmate Assault Must Be Predicated on the Foreseeability of Such Assault.**

The dispositive issue in this case is whether Hamilton County knew or had reason to anticipate an attack on the Plaintiff. The issue of municipal liability arising from inmate-on-inmate assaults is not new, and Tennessee courts have repeatedly noted that penal institutions are not insurers of an inmate's safety. *See Gillespie,* 1992 WL 9441, at *1 (Tenn. Ct. App. Jan. 24, 1992). The general rule is that a jail merely has a duty to use reasonable and ordinary care to prevent **foreseeable** attacks on inmates by other inmates. *Id.* (Emphasis added). A jail breaches its duty of care "when the institution's authorities knew of or had reason to anticipate an attack and did not use reasonable care to prevent it." *Id.* (citing *Spann v. State,* 421 So.2d 1090, 1092-93 (Dist. Ct. App. 1982), *petition for review denied w/o op.,* 430 So.2d 452 (Fla. 1983); *Lexington v. Greenhow,* 451 S.W.2d 424, 425-26 (Ky. Ct. App. 1970); *Parker v. State,* 282 So.2d 483, 486 (La.), *cert. denied,* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973); *Padgett v. State,* 558 N.Y.S.2d 433, 434 (App. Div.), *app. Denied,* 76 N.Y.S.2d 711, 565 N.E.2d 416, 563 N.Y.S.2d 767 (1990); *Williams v. Adams,* 288 N.C. 501, 504, 219 S.E.2d 198, 200 (1975); *Justice v. Rose,* 102 Ohio App. 482, 144 N.E.2d 303, 304 (1957); *Saunders v. State,* 446 A.2d 748, 751 (R.I. 1982)).

Put another way, for Hamilton County to be liable for injuries resulting from an assault on Mr. Huber, the general rule is that the jail must have had prior notice of an attack. *Id.* (citing *Harris v. State,* 61 N.J. 585, 297 A.2d 561, 563 (1972)). As the Court of Appeals noted in *Hanks v. State,* 1999 WL 454459, at *3 (Tenn. Ct. App. July 2, 1999), there must be some prior notice of an attack for liability to attach.

In *Gillespie v. Metropolitan Government,* referenced above, an inmate was injured when another inmate struck him with a milk crate. *Gillespie,* 1992 WL 9441, at *1. In affirming a trial court order granting summary judgment to Metropolitan Government, the proof from the jail officials as well as the deposition testimony of the plaintiff, confirmed that at no time prior to the assault had the plaintiff or any other inmate or correctional informed authorities that the attacker posed any threat to the plaintiff's safety. *Id.* at *2. The evidence also indicated that the plaintiff had not requested to be removed from the attacker prior to the attack, and there was no evidence that the attacker had a history of violent behavior. Therefore, because the plaintiff had failed to provide any proof to create a dispute of fact as to prior notice, the summary dismissal based upon the defense of lack of notice was upheld on appeal.

Similarly, in *Hanks* the plaintiff suffered personal injuries when another inmate threw a pan of hot grease on him. *Hanks,* 1999 WL 454459, at *1. As in *Gillespie,* the plaintiff in *Hanks* acknowledged that he had not notified anyone at the prison of his fear of a potential attack by the attacker. *Id.* at *4. Further, there was no evidence that the attacking inmate had any disciplinary infractions or other history of assaults prior to the attack on the plaintiff. *Id.* Again, the Court of Appeals stated that "[t]he penal institution breaches its duty [to use reasonable and ordinary care to prevent foreseeable attacks on inmates by other inmates] when its authorities know of or have reason to anticipate an attack and do not use reasonable care to prevent it," and that there must generally be some "prior notice of an attack." Accordingly, the Court held that the State had no notice that the attacker "posed any threat of harm [to plaintiff]" and thus that "the State did not breach its required duty of care." *Hanks,* 1999 WL 454459, at *4. As was true in *Gillespie,* a grant of summary judgment was upheld. *Id.*

In another case involving an unforeseen assault, a plaintiff was grabbed by another inmate who suddenly and without warning cut the plaintiff on the arm. *Kinningham v. State,* No. M2001-00495-COA-R3-CV, 2001 WL 1089501, at *1 (Tenn. Ct. App. Sept. 18, 2001).  In his deposition, the plaintiff admitted that he had not notice of potential harm and that he had no evidence to establish that the prison guards had any such notice. Again, the Court of Appeals affirmed a grant of summary judgment because the plaintiff could offer no proof the State had any prior notice that the fellow inmate posed any threat of harm to the plaintiff. *Id.* at *4.

  **4. This Claim Fails because Mr. Huber Did Not Give Prior Notice of a Likely Attack, and the Plaintiff Cannot Demonstrate that the County Knew of or Should Have Anticipated an Attack But Did Not Use Reasonable Care to Prevent It.**

The Plaintiff makes the assertion that the Doe Defendants knew that the Mr. Huber had been assaulted. (Doc. 1-2, PageID ##: 7, 8, Complaint, ¶¶ 18, 19), but nothing in the record supports such allegations.  What is fatal to the Plaintiff's claim is that there are literally no facts to support this statement. Despite the conclusory allegation, the Plaintiff provides no facts to indicate that Mr. Huber previously gave notice to anyone that an assault was likely to occur.

Mr. Huber was placed into a cell with the Harvey and other detainees. There is nothing in the record to suggest that the Plaintiff expressed that he needed or requested protection from any particular individuals, particularly Harvey. At no time prior to the attack did the Plaintiff report to jail personnel that he had been involved in any incidents or altercations with Harvey. There is also nothing in the record to suggest that Mr. Huber requested that Mr. Harvey be kept away from him because he feared an attack. There simply was no advance warning to corrections officers that Mr. Harvey would attack Mr. Huber.

Notice to Hamilton County of a pending attack by Mr. Harvey on Mr. Huber can neither be assumed nor established from the Plaintiff's generalized claims. The Court of Appeals has consistently held that where a governmental entity had no prior notice of an inmate-on-inmate attack, it could not be liable for a subsequent assault. In *Gillespie,* for example, the Court of Appeals found that the government was not liable because it could not foresee an attack where an inmate had given only "vague and unspecified" reasons for avoiding a fellow inmate had made no request to be moved away from that inmate, and where the other inmate had no institutional history of violent behavior." *Gillespie,* 1992 WL 9441 (Emphasis added).

The assault upon Mr. Huber was a possibility, given that penal institutions such as the Hamilton County jail house dangerous people convicted of or charged with crimes, and sometimes extremely serious or violent crimes. The evidence in the record, however, preponderates against any argument that the assault was a reasonably foreseeable probability, which is the standard for assessing the proximate cause necessary to impose liability in a negligence case against a jail. Summary judgment, then, is appropriate as to this claim against Hamilton County.

**5.     To the Extent the Complaint Asserts a Health Care Liability Claim, It Fails to Satisfy the Prerequisites for Bringing Such a Claim.**

A jail detainee can make a health care-type claim like anyone else; however, like anyone else, they too must follow the prescribed procedure and satisfy the required standards.

*Tenn. Code Ann.* § 29-26-101(a) defines a "health care liability action" as:

**[a]ny civil action, including claims against the state or a political subdivision thereof,** alleging that a health provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, **regardless on the theory of liability on which the action is based.** (Emphasis added).

*Tenn. Code Ann.* § 29-26-101(c) further provides that "[a]ny such civil action or claim is subject to the provisions of this part **regardless of any other claims, causes of action, or theories of liability alleged in the complaint**." (Emphasis added).

The decision of the Tennessee Supreme Court in *Ellithorpe v. Weismark,* 2015 WL 5853873 (Tenn. October 8, 2015) is controlling in this action and is instructive on the broad reach of THCLA in situations such as the present case. In *Ellithorpe*, a social worker provided counseling services to a minor child without first obtaining consent from the parents, leading to claims based on negligence, negligence per se, and intentional infliction of emotional distress. The defendant brought a motion to dismiss based on the parent's admitted failure to comply with THCLA mandatory requirements of giving pre-suit notice and filing a certificate of good faith. The parents contended that such requirements did not apply to them inasmuch as their claim was not based on health care liability but rather on "ordinary negligence." The trial court dismissed their claims based on their failure to comply with THCLA, but the state Court of Appeals reversed. The state Supreme Court, however, reversed the intermediate court and dismissed the case.

Citing (and quoting) *Tenn. Code Ann.* §29-26-101(a)(1), the state Supreme Court noted that any civil action alleging an injury related to the provision of, or failure to provide, health care services requires compliance with these provisions in THCLA, *regardless of the theory of liability on which the action is based.* The Court also stated that any such action is subject to the provisions of THCLA *regardless of any other claims, causes of action, or theories of liability alleged in the complaint.*"

It is evident, then, that under the Tennessee law, which governs the state law claim in this case, a civil action claiming damages <u>related to</u> the provision or failure to provide health care

services requires compliance THCLA. Where an inmate at the Washington County Detention Center alleged that he did not receive proper medical care, this Court specifically determined that governmental defendants were entitled to have medical malpractice claims dismissed under the same theories raised by the healthcare provider, *i.e.,* failure to comply with [at that time] the Tennessee Medical Malpractice Act. *Conrad v. Washington Cty.,* No. 2:11-CV-106, 2012 WL 554462, at *3 (E.D. Tenn. Feb. 21, 2012). This is true regardless of the theory of liability alleged and regardless of the existence of any other claims.

Because the Complaint makes assertions of negligence in the provision of health care-related service, it is subject to the THCLA "regardless of any other claims, causes of action, or other theories of liability alleged in the complaint." *Tenn. Code Ann.* § 29-26-101(c). Therefore, in addition to its other obvious failings, because the Plaintiff failed to comply with pre-suit notice and the certificate of good faith requirements of the THCLA, summary judgment of this claim as to Hamilton County is appropriate.

## V. CONCLUSION

For the reasons set forth above, Hamilton County should be granted summary judgment on all counts alleged against them and it should be dismissed from this matter with all costs assessed against the Plaintiff.

**HAMILTON COUNTY ATTORNEY'S OFFICE**

By:   s/*Sharon M. Milling*
       R. Dee Hobbs, BPR No. 10482
       Sharon McMullan Milling, BPR No. 36876
       625 Georgia Avenue, Suite 204
       Chattanooga, TN 37402
       Phone/Fax:  423-209-6150/6151
       Email:  rdhobbs@hamiltontn.gov
       Email: sharonm@hamiltontn.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 8, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                                *s/ Sharon M. Milling*