UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CASSIE RIEDER, as Administrator and Personal Representative of the Estate of Decedent, Michael Frederick Huber, ) ) ) ) *Plaintiff*, ) ) v. ) ) HAMILTON COUNTY, TENNESSEE and UNKNOWN NUMBERS OF JOHN DOES, in their individual capacities and their official capacities as agents of Hamilton County, Tennessee, ) ) ) ) ) ) ) *Defendants*. ) | Case No. 1:20-cv-206 Judge Travis R. McDonough Magistrate Judge Christopher H. Steger |

## MEMORANDUM OPINION

Before the Court are Defendants Hamilton County, Tennessee's ("the County") and Unknown Numbers of John Does ("the John Doe Defendants") motions for summary judgment (Docs. 23, 25). For the following reasons, the Court will **GRANT** these motions.

### I. BACKGROUND

The Plaintiff in this case is Cassie Rieder, the administrator and personal representative of the estate of Michael Frederick Huber. (Doc. 1-2, at 3.) In this capacity, she instituted the present suit arising out of the circumstances of Huber's death for the benefit of his estate, spouse, and children. (*Id.*) The Chattanooga Police Department ("CPD") arrested Huber on April 4, 2019, on a charge of public intoxication, and a $500 bond was set. (Doc. 27-1, at 6–7.) CPD arrested Steven Harvey on the same day for various drug, theft, forgery, and burglary charges.

(*Id.* at 8–13.) On April 7, 2019, Huber was placed in cell 1QD14 at Hamilton County Jail with Harvey and other detainees. (*Id.* at 14–17.)

Hamilton County Sheriff's Office ("HCSO") Policy Chapter 90 Section 05.09 ("the Classification Policy") governs classification of inmates at Hamilton County Jail by security level and determines the environment in which they are held. (*Id.* at 18–25.) During intake, the officers initially classify all inmates as maximum security. Then, before inmates are assigned to their housing units, they go through a booking process, which requires officers to assess: (1) the severity of the current charges/convictions, (2) the bond amount, (3) serious offense history, (4) escape history, (5) history of institutional violence, (6) prior felony convictions, (7) substance abuse, (8) "stability factors" such as age, education, employment, and years crime-free, and (9) any other special concerns. (*Id.* at 23.) Based on this initial classification, the inmate is assigned a score and a corresponding housing unit. (*Id.*) Booking officers are also authorized to refer exceptional cases to be moved from one category to another, based on their professional judgment, despite an insufficient point score. (*Id.* at 24.) Any inmate may request protection from the general population and placement in protective custody, which will be investigated by the Security Intelligence Officer and approved or disapproved by the Security Supervisor, Jail Captain, and Chief of Corrections. (*Id.* at 20.)

The placement of Huber and Harvey in the same cell complied with the Classification Policy because neither Harvey nor Huber was identified as violent, in need of protective custody, high risk, or incompatible with other inmates during the initial classification interview. (*Id.* at 2.) Nonetheless, on April 7, 2019, Harvey assaulted Huber around 9:00 or 10:00 a.m. for an unknown reason. (*Id.* at 37.) Around 11:30 p.m., a nurse went to the cell to administer medicine to inmates, including Huber, who take medication. (*Id.* at 34.) He noticed Huber's breathing

was distressed and attempted to wake him, but he did not respond. (*Id.*) As the nurse stood over Huber, he noticed Huber was lying in a pool of urine and recognized he was having a seizure. (*Id.*) He asked inmates how long Huber had been like this, and they told him Huber was in that state all day. (*Id.*) No one responded when he asked why they had not told anyone. (*Id.*) After taking vitals and further attempting to rouse Huber, the nurse told his supervisors to call an ambulance at 11:42 p.m. (*Id.*) An ambulance arrived at 11:50 p.m. and transported Huber to the hospital. (*Id.* at 37.) On an incident report, an officer noted Harvey's description of the incident as, "we got to fighting and I thought I just knocked him out and he was just sleep [sic] all day." (*Id.* at 37.)

It is HCSO practice to perform cell checks on inmate well-being approximately every thirty minutes. (*Id.* at 3.) The cell-check logs for cell 1QD14 on April 7, 2019, show that cell checks were, for the most part, performed approximately every thirty minutes starting at 7:00 a.m. (*Id.* at 26–27.) There were, however, seven potentially missed checks and six late checks—performed more than thirty minutes since the previous one. (*Id.*) The other thirty-five checks were timely performed, signed off by officers, and do not note any indicia that Huber needed medical attention or was assaulted. (*Id.*) The are no records reflecting that Huber or any other inmate informed HCSO staff that Harvey posed any threat to him, requested he be moved to a different cell, reported that Huber had any previous incidents with Harvey, or told officers Huber needed medical attention or was assaulted. (*Id.* at 3–4.) Ultimately, Huber passed away on September 29, 2019, after being in a vegetative state since the time of the assault. (Doc. 1-2 at 8.)

Plaintiff filed the instant lawsuit on April 2, 2020, in the Circuit Court for Hamilton County, Tennessee. (Doc. 1-2.) The causes of action against the John Doe Defendants are (1)

deprivation of due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; and (2) wrongful death pursuant to Tenn. Code Ann. § 20-5-106.[1] (*Id.* at 8–11.) The causes of action against the County are: (1) deprivation of due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) wrongful death pursuant to Tenn. Code Ann. § 8-8-302, (3) negligent training pursuant to Tenn. Code Ann. § 8-8-302, and (4) negligent supervision pursuant to Tenn. Code Ann. § 8-8-302. (*Id.*) Plaintiff also requested actual damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1988. (*Id.* at 11.) Defendants removed the action to this Court on July 23, 2020. (Doc. 1.)

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to

---

[1] The Complaint also states, "Plaintiff sues the individual Doe Defendants in their individual and official capacities . . . pursuant to Tenn. Code Ann. § 8-8-302," under counts listed as negligent training and negligent supervision. The Court treats official-capacity suits brought against officers as claims against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") To the extent these claims are made against officers in their individual capacities, Plaintiff has conceded that § 8-8-302 does not provide a basis for claims against individual, only the County, and so these claims should be dismissed. (Doc. 30, at 5–6.) Plaintiff also concedes that she does not bring any negligence claims pursuant to the Tennessee Government Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq*. Accordingly, the only claims remaining against the John Doe Defendants to consider on their motion for summary judgment are civil rights violations under § 1983 and wrongful death.

any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

#### A. The John Doe Defendants' Motion for Summary Judgment

The John Doe Defendants argue that the failure to name specific individuals within the statute-of-limitations period should result in summary judgment. (Doc. 24.) Plaintiff concedes as much with regard to her § 1983 claim. (Doc. 30, at 5.) But Plaintiff maintains that her wrongful-death claim "is not ripe for dismissal, [n]or at issue for purposes of this summary judgment determination," because the John Doe Defendants did not address it in their briefing. (*Id.* at 6.) This is inaccurate. The John Doe Defendants briefed the statute-of-limitations issue as

5

to *both* claims against them, and the statute of limitations bars the wrongful-death claim for the same reasons it bars the § 1983 claim. (Doc. 24, at 6–7.)

> The statute of limitations applicable to a § 1983 action *is the state statute of limitations applicable to personal injury actions* under the law of the state in which the § 1983 claim arises. The statute of limitations generally begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action. The Court looks to what event should have alerted the typical lay person to protect his or her rights. . . . And the naming of a John Doe defendant in plaintiff's [] complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant.

*Nelkin*, No. 3:14-CV-41-TAV-CCS, 2015 WL 2448320, at *9 (emphasis added) (internal quotations and citations omitted) (citing *Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634–35 (6th Cir. 2007); Tenn. Code Ann. § 28-3-104(a); *Roberson v. Tennessee,* 399 F.3d 792, 794 (6th Cir. 2005); *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.,* 606 F.3d 301, 307 (6th Cir.2010); *Cross v. City of Detroit,* No. 06–11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008)).

As the John Doe Defendants argued, the same statute-of-limitations period applies to both claims. *See id.* The limitations period for the § 1983 claim began to run when the alleged civil-rights violations occurred—April 7, 2019. (*See* Doc. 27-1, at 34–37.) Huber passed away on September 29, 2019. (Doc. 1-2 at 8.) The instant lawsuit was filed on April 2, 2020, within the statute of limitations, but naming the John Doe Defendants did not toll the limitations period. *See Nelkin*, 2015 WL 2448320, at *9 (citing *Cross*, 2008 WL 2858407, at *1 ("[S]ubstituting a named defendant for a previously unnamed, 'John Doe,' defendant is considered to be a change in parties, rather than a substitution of parties, for purposes of Fed. R. Civ. P. 15(c). Thus, new parties may not be added after the statute of limitations has run and such amendments do not satisfy the mistaken identity requirement of *Rule 15(c)(3)(B).*" (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)))).

6

Plaintiff has not attempted to amend her complaint or serve process on any officer or agent, nor has she made any argument in support of tolling the limitations period in this case. (*See* Doc. 30, at 6.) Huber was assaulted the morning of April 7, 2019, discovered injured later that night, and died on September 29, 2019. (Doc. 1-2 at 8.) It has now been almost three years since the events giving rise to the § 1983 claim occurred and almost two-and-a-half years since Huber died. The one-year statute-of-limitations periods for both the § 1983 and wrongful-death claims have long ago expired as to the unnamed John Doe Defendants. Accordingly, the Court will **GRANT** John Doe Defendants' motion for summary judgment (Doc. 23) and dismiss Plaintiff's claims against them.

## B. Defendant Hamilton County's Motion for Summary Judgment

### i. Fourteenth Amendment Claim under § 1983

Though not listed clearly, as far as the Court can discern, Plaintiff asserts the following theories of deprivation of rights under the Fourteenth Amendment: (1) Eighth Amendment failure to protect, (2) failure to provide medical care, (3) failure to supervise, and (4) failure to train. (*See* Doc. 1-2, at 8–9.) A local governmental entity is a "person" within the meaning of 42 U.S.C. § 1983 and, therefore, may be subject to liability for § 1983 claims. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). A municipal defendant, however, is only liable "if a custom, policy, or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 685 (6th Cir. 2016) (quoting *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691

(emphasis in original). Therefore, for Plaintiff's § 1983 claims on any of her theories to survive summary judgment, she must raise a genuine issue of material fact as to whether the County had a "custom, policy, or practice" that was the moving force behind the violation of Huber's rights. *See id.*

Plaintiff contends that the County's policy to "initially classify all inmates as maximum security" coupled with other County provisions that "allow rampant violations of these same policies," allows vulnerable inmates, like Huber, to be housed with dangerous inmates, like Harvey. (Doc. 30, at 11–12.) Plaintiff does not cite, and there is no evidence in the record to support, her contention that other policies allow rampant violations of the housing-classification policies. The Court notes that Plaintiff conducted no discovery in this case. (Doc. 35, at 4.) Instead, Plaintiff tries to create the appearance of a genuine issue of material fact based on allegations and inferences therefrom alone. "A party may not rely on 'conclusory allegations or unsubstantiated speculation' on summary judgment." *See Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 92–93 (S.D.N.Y. 2017) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)). "Moreover, arguments in a brief are not evidence, and it is evidence rather than allegations that is required at the summary-judgment stage." *Id.* (citing *Sales v. U.S. Underwriters Ins. Co.*, No. 93-cv-7580 (CSH), 1996 WL 175088, at *1 (S.D.N.Y. Apr. 15, 1996)).

Plaintiff also contends that the County's "custom" of violating the Classification Policy and insufficiently performing cell checks every thirty minutes, as required by HCSO practice, gives rise to municipal liability. (*Id.* at 15.) "Generally, a violation of a policy by actors below the policy-making level cannot establish municipal liability under § 1983. There is an exception to this rule if plaintiff can demonstrate that the municipality had notice of, but repeatedly failed

8

to make any meaningful investigation into, allegations of constitutional rights violations." *Gunderson v. City of New York*, No. 96 CIV. 510 JFK, 1999 WL 76901, at *4 (S.D.N.Y. Feb. 16, 1999) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)); *see also Moralez v. City of Fresno*, No. CV F 06-0224 AWI SMS, 2006 WL 8458532, at *5 (E.D. Cal. May 13, 2006) ("Here, the complaint does not allege that Defendants' unconstitutional actions were the result of an official policy or custom of Defendant City of Fresno. In fact, the complaint alleges that the individual named Defendants *violated* policies. Thus, the complaint fails to sufficiently allege municipal liability, and it is subject to dismissal.") (emphasis added); *Steward v. Gregory*, No. 4:18-CV-1768-JAR, 2020 WL 3429145, at *3 (E.D. Mo. June 23, 2020) ("[P]laintiff alleges the opposite of an unconstitutional policy by claiming that Gregory and Wright violated "Policy and Procedure" when they failed to call for a doctor after he received high blood sugar test results. In other words, plaintiff alleged that Warren County Jail had an appropriate policy, but defendants failed to comply. Therefore, plaintiff's claims against [the municipality] must be dismissed.")

Here, Plaintiff makes no showing whatsoever of a custom of violating the cell-check and classification policies. The only record evidence she points to is the text of the policies themselves and the cell-check logs for Huber's cell on April 7, 2019, indicating several missed and late checks. While a custom or practice of violating the classification or cell-check policies could, in theory, give rise to municipal liability, Plaintiff would have to show that violations of those policies were "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The fact that Huber and Harvey were placed in the same cell and that several cell checks were missed or late on the day of Huber's injuries does not support a finding that policy violations were "so widespread as to have the force of law"—they merely

9

demonstrate what happened in one cell in Hamilton County Jail on one day, April 7, 2019. The Court again notes that Plaintiff did not conduct *any* discovery, so she has no evidence to present of a bigger picture of the customs and practices of the officers in Hamilton County Jail. Because Plaintiff has not raised genuine issue of material fact regarding a custom, policy, or practice that caused the deprivation of Huber's rights, the County's motion for summary judgment as to the § 1983 claim will be **GRANTED**.

> ii. *State-Law Claims*

Plaintiff's complaint also alleges state-law claims of negligent training, negligent supervision, and wrongful death against the County and purports to bring these claims "pursuant to § 8-8-302." (Doc. 1-2, at 9–11.) This statute, however, establishes a cause of action against counties only for its officers' intentional or non-negligent acts. *Jenkins v. Loudon Cnty.*, 736 S.W.2d 603, 609 (Tenn. 1987), *abrogated in part on other grounds by Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001). Claims against counties for its officers' negligence are governed by the Tennessee Government Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.*, ("GTLA"). *See* Tenn. Code Ann. § 29-20-104(b).

Insofar as Plaintiff asserts claims against the County for its officers' intentional or non-negligent acts under Tenn. Code Ann. § 8-8-302, such claims fail because there is not a scintilla of evidence in the record that any officer acted intentionally or non-negligently with respect to their treatment of Huber. Plaintiff does not allege intentional or reckless acts in her complaint, nor does she argue such acts existed in her response to the County's motion for summary judgment—she only argues that the officers' acts do not need to be *criminal* in order to impose liability under the statute. (*See* Doc. 1-2; Doc. 30, at 16–17.) This falls far short of showing a genuine issue of material fact on a § 8-8-302 claim.

10

To the extent Plaintiff raises claims against the County based on officers' negligent acts, these claims are governed by the GTLA. *See* Tenn. Code Ann. § 29-20-104(b). Plaintiff stated in her response to the motion for summary judgment that "Plaintiff's [sic] do not bring claims pursuant to the GTLA." (Doc. 30, at 6.) Later in the brief, however, Plaintiff appears to make an argument for the County's liability under the GTLA, stating "there was a foreseeable or actual threat known to the County from Steven Harvey against Mr. Huber, based on the policies and customs of Defendant, in light of their knowledge of each prisoner and their criminal history." (*Id.* at 17.)

While it is not clear whether Plaintiff asserts a GTLA claim, in any event, the County can only be liable for an officer's negligence in the case of an inmate-on-inmate assault when the County had prior notice of an attack. *Kinningham v. State*, No. M2001-00495-COA-R3CV, 2001 WL 1089501, at *2–*4 (Tenn. Ct. App. Sept. 18, 2001) (finding the state was not liable for an unforeseen inmate-on-inmate assault because the plaintiff "offered no proof that the State had any notice that Hodges posed any threat of harm to Kinningham and, indeed, that Kinningham himself had no notice of potential harm.") Despite Plaintiff's conclusory assertion the "there was a foreseeable or actual threat known to the County from Steven Harvey against Mr. Huber," there is no evidence in the record supporting, and Plaintiff does not even allege facts suggesting, that the County had any notice that Harvey posed a threat to Huber. Accordingly, Plaintiff has not shown a genuine issue of material fact as to its state-law claims against the County, so the Court will **GRANT** the County's motion for summary judgment (Doc. 25).

## IV. CONCLUSION

For these reasons, the John Doe Defendants' motion for summary judgment (Doc. 23) and the County's motion for summary judgment (Doc. 25) are **GRANTED**.

11

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**